OPINION OF THE COURT
Leroy B. Kellam, J.
A motion to dismiss the indictment presents a novel issue for the consideration of the court. Presented for review is whether a defendant, who executes a waiver of immunity and exercises his right to testify before a Grand Jury, may waive his constitutional rights in the absence of his attorney.
FINDINGS OF FACT
On October 4,1983, the defendant was arraigned in Criminal Court upon a felony complaint charging criminal possession of a weapon in the third degree, in violation of Penal Law § 265.02 (4). The court appointed the Legal Aid Society to represent defendant at his arraignment. The matter was adjourned until October 7, 1983, for the purpose of affording the defendant an opportunity to retain the services of private counsel. Prior to October 7, 1983, the defendant procured the services of private attorney Jerome Karp to represent him in the instant matter. On October 7,1983, an associate with Karp’s law firm, Mitchell Friedman, filed a notice of appearance in Criminal Court indicating that he had been retained to represent defendant in this proceeding. Defendant acknowledges that he tendered payment to Mr. Karp for these services. On that date, the case was referred to the Queens County Grand Jury for further proceedings.
Mr. Karp thereafter notified the Queens County District Attorney’s office of his intention to have the defendant testify before the Grand Jury. The District Attorney acknowledged Mr. Karp’s request by communicating to him information that a *8 Grand Jury presentation had been scheduled for November 3, 1983.
Prior to November 3, 1983, defendant met with Mr. Karp in the latter’s office to discuss the particular circumstances of the case and to adequately prepare defendant for his scheduled appearance before the Grand Jury. Mr. Karp informed defendant that he would accompany him to the Grand Jury on the date of the presentation.
On November 3, 1983, defendant appeared at the Queens County District Attorney’s office for the purpose of testifying before the Grand Jury. Defendant however was not accompanied on that occasion by his attorney, Karp. Defendant, while waiting in an area outside the Grand Jury room, was approached by the Assistant District Attorney assigned to his case. Defendant advised the prosecutrix that he was unable to pay Mr. Karp for representing him before the Grand Jury and therefore it would be necessary for him to obtain an adjournment for a few more days in order that he could satisfactorily complete his financial arrangements with Karp. Defendant received no instructions from Karp as to whether he should nevertheless proceed to testify before the Grand Jury without the presence of his attorney. The Assistant District Attorney did not attempt to contact Mr. Karp, but rather instructed defendant that it would be impossible to adjourn his scheduled appearance to a future date because the term of the Grand Jury was close to expiration. The prosecutrix further warned defendant that if he did not proceed to testify before the Grand Jury on that particular day then he would never again be afforded that opportunity. The Assistant District Attorney advised defendant that the “only way” in which his testimony would be presented for review of the Grand Jury was for it to be presented on that specific day regardless of whether his attorney was present to assist him.
Defendant believed that the only means possible in which he could have sought to avoid being indicted was for him to communicate his story to the Grand Jury. Defendant thus executed a waiver of immunity and proceeded to render testimony in his own behalf.
An indictment charging defendant with criminal possession of a weapon in the third degree was filed in the Supreme Court of New York, Queens County, on November 4, 1983.
CONCLUSION OF LAW
In this State, the right of a criminal defendant to interpose an attorney between himself and the sometimes awesome power of the sovereign has long been regarded as a cherished principle. *9 As early as 1777 (NY Const of 1777, art XXXIV), it had been recognized that even the most intelligent and educated layman lacked the requisite acumen and knowledge of the legal system to adequately prepare a defense, no matter how strong and convincing it might be. (See, People ex rel. Burgess v Risley, 66 How Prac 67.) This need, moreover, has been recognized as even more vital with respect to the unsophisticated, who are often uneducated in the ways of the criminal justice system and unaware of the role counsel can play in protecting their interests. (Cf. People v Rogers, 48 NY2d 167; People v Hobson, 39 NY2d 479.) This court’s special solicitude for this fundamental right is based upon the belief that the presence of an attorney is the most effective means available for minimizing the disadvantage at which an accused is placed when he is directly confronted with the awesome law enforcement machinery possessed by the State. (See, People v Settles, 46 NY2d 154.)
The presence of counsel confers no undue advantage to the accused. Rather, the attorney’s presence serves to equalize the position of the accused and sovereign, mitigating the coercive influence of the State and rendering it less overwhelming.
Although the prosecutrix had little, if any, difficulty in engaging in a conversation with defendant Hall and eliciting a statement from him outside the Grand Jury room, that in itself cannot sustain its admissibility. Once a defendant has engaged the services of an attorney as advocate of his rights, the attorney’s function cannot be negated by the simple expedient of the District Attorney questioning defendant in his absence. (See, People v Rogers, supra.) That the prosecutor and police may contend that such a rule diminishes the likelihood of a waiver or self-incriminating statements is immaterial to our system of justice. (Cf. People v Donovan, 13 NY2d 148.)
The New York Court of Appeals, in its quest to protect the rights of the accused from being systematically vitiated by the law enforcement community, has repeatedly held that the right to counsel “indelibly” attaches in particular circumstances so that this fundamental right may not be waived outside the presence of the defendant’s attorney. (People v Settles, 46 NY2d 154, supra; People v Rogers, supra.) It was established in People v Settles (supra), and cases cited therein, that a defendant is entitled to counsel at all critical stages of a criminal prosecution and that the right to counsel attaches once the criminal action has been commenced, or, under certain circumstances, even earlier. Under present law, a criminal action commences with the filing of an accusatory instrument (CPL 1.20 [17]), which *10 includes a felony complaint (CPL 1.20 [1], [8]). Certainly, it cannot be disputed that defendant Hall’s arraignment in Criminal Court upon a felony complaint triggered his right to counsel. (See, People v Di Biasi, 7 NY2d 544; People v Meyer, 11 NY2d 162; People v Abdullah, 108 AD2d 817.)
Once an accusation is made by filing the felony complaint, the matter is in litigation and this “is precisely the juncture at which legal advice is crucial [and] any discussions relating thereto should be conducted by counsel: at that point the parties are in no position to safeguard their rights”. (People v Settles, supra, pp 163-164.) This rule is hardfast and does not depend on whether the interrogator has actual knowledge that an accusatory instrument is outstanding. (See, People v Peters, 83 AD2d 711.) The uncontroverted fact that defendant Hall had been arraigned on a felony complaint should have served as a warning to the prosecutrix that all questioning of the defendant must cease unless conducted in the presence of counsel. The precise terms of the retainer or contractual agreement arranged between defendant Hall and his attorney is of little, if any, import to the District Attorney. (See, People v Marrero, 51 NY2d 56.) Moreover, an attempt to secure a waiver of one’s right to counsel in a criminal proceeding in the absence of his lawyer, already retained or assigned, would constitute a breach of professional ethics. (People v Hobson, supra; see, ABA Code of Professional Responsibility, DR 7-104 [A] [1].) Since the Code of Professional Responsibility is applicable, it would be grossly incongruous for the courts to ignore its violation in a criminal matter.
Defendant Hall, while standing outside the Grand Jury room, was faced with a dilemma. Was he going to testify before the Grand Jury without the assistance of his attorney or merely go home and await notification of his indictment? Hall was confronted with a decision of monumental importance, and chose the former route. Surely, the proceedings were at a critical stage, and it would be difficult to envision a situation where the need for legal advice and sound evaluation of the alternatives was more necessary and desirable than presented here. Thus, we are presented with the question of whether a defendant can waive his right to counsel, in the absence thereof, and relying upon the rationale of People v Samuels (49 NY2d 218, supra), we conclude that he cannot.
Although one cannot deny that the State has a significant interest in prosecuting criminal conduct, that interest cannot override the fundamental right to an attorney guaranteed by our State Constitution. This court is unpersuaded by the prosecutor’s contention that it would be tedious and time-consuming *11 if he was required to contact defense attorneys to reschedule or confirm dates for his client to testify before the Grand Jury. The infringement of defendant’s constitutional rights for the sake of administrative convenience cannot be tolerated.
The testimony elicited from the defendant before the Grand Jury was therefore tainted by the denial of his right to counsel, thus mandating a dismissal of the indictment. (See, People v Holcombe, 74 AD2d 700.) Accordingly, the indictment charging the defendant with criminal possession of a weapon in the third degree is dismissed. The District Attorney is granted permission to resubmit this matter to another Grand Jury.